## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ENTEGEE, INC. d/b/a ENGINEERING | : | |
| RESOURCES, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CASE NO. 3:15-cv-1087 (VLB) |
| | : | |
| KYLE KORWEK AND BUTLER | : | September 4, 2015 |
| AMERICA, LLC, | : | |
|     Defendants. | : | |

### MEMORANDUM OF ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [Dkt. #2] AND DENYING DEFENDANT KORWEK'S MOTION FOR STAY UNDER FEDERAL ARBITRATION ACT [Dkt. #30]

Plaintiff Entegee, Inc. ("Entegee") brings an action seeking injunctive relief against Defendant Kyle Korwek ("Korwek"), a former employee of Entegee, and current employee of Defendant Butler America, LLC ("Butler"), arising out of Korwek's alleged violation of his Employment Agreement with Entegee.  The Amended Complaint also brings a claim for damages against Defendant Butler for interference with Entegee's contractual relationship with Korwek.

## I.   Background

On June 7, 2012, Entegee hired Korwek as a recruiter in its Shelton, Connecticut office.  [Dkt. #38-1, Hatch Aff. at ¶ 4].  In order to perform his recruiting responsibilities, Entegee provided Korwek with access to a host of confidential proprietary information, including a database known as the Co-Broke System.  [*Id.* at ¶ 8].  The Co-Broke System is an internal and comprehensive, nationwide database of all the recruitment information available to Entegee, including job orders, client names, locations of employment opportunities, the pay rates of employers, skill sets sought by employers, leads on job

opportunities, the starting and concluding dates of particular job assignments, and other information. [*Id.*]. The System may be accessed only by Entegee employees, from computers located in the company's physical offices. [*Id.*]. It cannot be reached through personal computers or other forms of remote Internet access. [*Id.*]. On August 6, 2014, Korwek resigned from Entegee to work at a competitor, but on October 1, 2014, Korwek returned to Entegee. [*Id.* at ¶ 13]. Upon returning to Entegee, Korwek signed a new employment agreement (the "Employment Agreement"), which contains non-competition, non-solicitation, and non-disclosure covenants. [*Id.* at ¶ 14; Dkt. #12-2, Ex. B to Am. Compl.]. The non-competition provision provides that, for a "period of twelve (12) months" following the termination of Korwek's employment, within a 50-mile radius of the Shelton office, Korwek was restricted from "being employed by, consulting or rendering services for, any business which competes with, or is similar to, [Entegee's] business . . . in a capacity performing functions similar to those performed or managed by [Korwek] while employed by [Entegee]." [Dkt. #12-2, Ex. B to Am. Compl. at ¶ 7 c)]. The non-solicitation covenants restrict Korwek from soliciting or recruiting any Entegee (i) employee who worked or (ii) client who was served within this radius during "the twelve (12) months immediately prior to [Korwek's] termination of employment." [*Id.* at ¶¶ 7 a)-b)]. Finally, the non-disclosure covenant prevents Korwek from disclosing "directly or indirectly . . . to any third party, or using for any purpose other than for the benefit of [Entegee], any Confidential Information." [*Id.* at ¶ 5]. "Confidential Information" is broadly defined to include "information regarding the procedures, sales,

2

marketing, pricing and costs, operations, training, finances . . . clients, personnel . . . objectives and strategies, and suppliers of [Entegee]," "the name, address, contact persons or requirements of any existing or prospective client[,]" and "client and candidate preferences, experiences, [and] requirements."  [*Id.*].

The Employment Agreement also contains a section titled "Dispute Resolution and Arbitration Program."  [*Id.* at 4].  This section includes an arbitration clause, which states that the parties

> [A]gree that any and all legally cognizable disputes, claims or controversies arising out of or relating to this Agreement, the employment relationship between the parties, or the termination of the employment relationship shall be resolved by binding arbitration in accordance with the Employment Arbitration Rules of the American Arbitration Association then in effect

[*Id.* at ¶ 12].

This section also includes the following provision:

> A party may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy, but only upon the ground that the award to which that party may be entitled may be rendered ineffectual without such provisional relief.  Accordingly, the arbitration requirement does not prevent preliminary or temporary injunctive relief in court to prevent irreparable harm caused by the violation of any Restrictive Covenant of this Agreement in advance of the arbitration

[*Id.* at ¶ 14].

On both May 15 and May 29, 2015, Korwek did not attend work at Entegee. [Dkt. #38-1, Hatch Aff. at ¶ 15].  At the preliminary injunction hearing, Korwek testified that on May 15, 2015, he attended an interview conducted by Defendant Butler, a direct competitor of Entegee.  On May 27, 2015, Butler extended Defendant Korwek an offer of employment.  *See* [Def.'s Ex. A at Prelim. Inj. Hr'g,

Aug. 24, 2015].  The following day, May 28, 2015, Defendant Korwek accepted the offer.  [*Id.*].  On June 4, 2015, Korwek tendered his resignation to Jason Hatch of Entegee.  [Dkt. #38-1, Hatch Aff. at ¶ 17].  Between the time Korwek accepted the offer and his resignation, Korwek did not disclose his intent to leave Entegee.  [*Id.* at ¶ 16].  Also during that time period, documentary evidence and Korwek's testimony at the preliminary injunction hearing establish that Korwek downloaded and emailed to himself hundreds of proprietary and confidential documents, including a cell phone contact list of Entegee employees, resumés of prospective placements which had been reviewed by Entegee employees, and monthly reports containing client names, targeted start dates, pay rates, and bill rates.  [*Id.* at ¶ 21, Ex. F; Dkt. #61, Gessen Aff. at Ex. A].  At the same time, Korwek deleted dozens of files from his Entegee work computer.  [Dkt. #41, Gessen Aff. at ¶ 9].  Korwek testified that (i) the reason he downloaded the documents was because he was concerned about leaving Entegee and wanted to help ensure that he would be successful in his new position, (ii) he was aware of the non-disclosure and non-compete provisions in his employment agreement at the time he downloaded them, (iii) transmitting this information was not authorized when he did it, and (iv) while prior downloads and emails to his personal account of Entegee documents was for the benefit of Entegee, such activity following his acceptance of an offer from Butler was to Entegee's detriment.

II.    <u>Legal Standard</u>

"Federal law governs whether a preliminary injunction can issue from a federal court sitting in diversity."  *Verzani v. Costco Wholesale Corp.*, 641 F.

Supp. 2d 291, 302 (S.D.N.Y. 2009) (citing *Baker's Aid v. Hussmann Foodserv. Co.*, 830 F.2d 13, 15 (2d Cir. 1987) (per curiam)).  For a preliminary injunction to enter, the plaintiff must demonstrate "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits . . . and a balance of hardships tipping towards the party requesting the preliminary relief."  *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 215 (2d Cir. 2012).

"The typical preliminary injunction is prohibitory and generally seeks to maintain the status quo pending a trial on the merits."  *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995).  "A mandatory injunction, in contrast, is said to alter the status quo by commanding some positive act."  *Id.* An injunction that goes beyond the preservation of the status quo requires "a more substantial showing of likelihood of success."  *S.E.C. v. Unifund SAL*, 910 F.2d 1028, 1039 (2d Cir. 1990).  Thus, a mandatory injunction should issue "only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief."  *Doherty*, 60 F.3d at 34.

The Second Circuit further instructs that "[t]he distinction between mandatory and prohibitory injunctions is not without ambiguities or critics."  *Id.* Indeed, "breach of contract cases," like the present one, are particularly susceptible to "[c]onfusion . . . as to whether an injunction is mandatory or prohibitory" because of conflicting views on "the meaning of 'status quo'."  *Id.* To wit,

> **A plaintiff's view of the status quo is the situation that would prevail if its version of the contract were performed.  A defendant's view of the status quo is its continued failure to perform as the plaintiff desires.  To a breach of contract defendant, any injunction requiring performance may seem mandatory**

*Id.*

Here, Defendant Butler claims that the injunction Entegee seeks "does more than maintain the *status quo*" because "Entegee seeks to force Butler America to terminate its current employee, Kyle Korwek."  [Dkt. #29 at 1]. However, the injunction seeks to restrain *Korwek*, from pursuing employment with Butler, it does *not* require Butler to terminate, or do anything else with respect to Korwek.  *See* [Dkt. #13, Am. Proposed Order for Prelim. Inj. at ¶ 1 ("*Defendant Korwek* is preliminarily enjoined from . . . being employed by . . . any business which competes with, or is similar, to Entegee . . . .")].  In addition, while Korwek began his employment at Butler prior to the commencement of this action, Korwek represents that he is presently "on paid administrative leave" and that "Butler has agreed to a standstill status" with respect to Korwek's employment.  [Dkt. #30 at ¶¶ 10, 10 n. 1]; *see also* [Dkt. #29-1, Harrow Aff. at ¶ 7 ("Korwek is currently on indefinite paid administrative leave and does not have access to [Butler] company computers or property.")].  Given the uncertainty of Plaintiff's present employment status at Butler, it is far from clear that granting Plaintiff the injunctive relief it seeks would alter the status quo.  Finally, as Entegee points out, for purposes of a preliminary injunction, the status quo is "the situation that existed between the parties immediately prior to the events that precipitated the dispute."  *ASA v. Pictometry Intern. Corp.*, 757 F. Supp. 2d 238, 243 (W.D.N.Y. 2010).  Since Korwek transmitted the confidential information

prior to the commencement of his job at Butler, "the last actual peaceable

uncontested status which preceded the pending controversy" would be a period

of time when Korwek was still an employee of Entegee.  *Id.* (quoting *LaRouche v.*

*Kezer*, 20 F.3d 68, 74 n. 7 (2d Cir. 1994)).[1]

III.    Analysis

A.      Plaintiff is Entitled to a Preliminary Injunction[2]

        "In non-compete cases, such as this one, the irreparable harm analysis and

the likelihood of success on the merits analysis are closely related and often

conflated."  *Tyco Healthcare Grp. v. Ross*, No. 3:11-cv-373 (CFD), 2011 WL

1790186, at *3 (D. Conn. May 10, 2011).  Here, Plaintiff Entegee has a high

likelihood of success on the merits and irreparable harm is very likely to occur

absent an injunction.

        "In Massachusetts, a restrictive employment covenant is enforceable if the

employer demonstrates that the agreement is (1) necessary to protect a legitimate

---

[1] In any event, as demonstrated *infra*, even under a heightened mandatory
injunction standard, Plaintiff has demonstrated a high likelihood of success on
the merits and a clear showing that it is entitled to the relief requested.

[2] Korwek's Employment Agreement, which is the basis for the injunctive relief
Plaintiff seeks, provides that, "[e]xcept for the Dispute Resolution and
Arbitration Program contained herein which is covered by the FAA, this
Agreement shall be construed and enforced in accordance with the laws of the
State of Massachusetts . . . ."  [Dkt. #1-3, Ex. B to Compl. at ¶ 21].  While the
parties do not completely agree on whether Massachusetts or Connecticut
substantive law applies, the Court finds no material distinctions between the
two bodies of law in the context of Plaintiff's motion.  *See Indus. Techs., Inc. v.*
*Paumi*, No. CV 960335925, 1997 WL 306723, at *3 (Conn. Super. Ct. May 28, 1997)
("[T]he only pertinent difference between Connecticut and Massachusetts law
with regard to the enforcement of a noncompete provision is the extent to which
the courts are permitted to 'blue pencil' a facially unenforceable noncompete
provision.")

business interest of the employer, (2) supported by consideration, (3) reasonable in scope and (4) otherwise consonant with the public interest." *William Gallagher Assocs. Ins. Brokers v. Everts*, 13 Mass. L. Rep. 716 (Mass. Super. Ct. Sept. 6, 2000) (citations omitted).[3]

First, both Connecticut and Massachusetts courts recognize that legitimate business interests include safeguarding the goodwill that an employer has acquired through its dealings with customers, as well as its confidential data and trade secrets.  *See New England Canteen Serv., Inc. v. Ashley,* 372 Mass. 671, 674, 363 N.E.2d 526, 528 (Mass. 1977); *Marine Contractors Co., Inc. v. Hurley*, 365 Mass. 280, 287, 310 N.E.2d 915, 920 (Mass. 1974); *May v. Young,* 125 Conn. 1, 5, 2 A.2d 385, 387 (Conn. 1938); *Robert* S. *Weiss & Assocs., Inc. v. Wiederlight,* 208 Conn. 525, 538, 546 A.2d 216, 224 (Conn. 1988).  Here, both the documentary evidence and Defendant Korwek's testimony establish that the information and data that he took was, at the very least, confidential, and raised a considerable risk of undermining Plaintiff Entegee's goodwill in the market generally, and with client Sikorsky, in particular.  Absent the non-compete, non-solicitation, and non-disclosure restrictions in the Defendant's Employment Agreement, Entegee would be unable to protect this interest and information.  Accordingly, the first element is met.

---

[3] Connecticut law applies similar factors in assessing restrictive covenants: "(1) the employer's need to protect legitimate business interests, such as trade secrets and customer lists; (2) the employee's need to earn a living; and (3) the public's need to secure the employee's presence in the labor pool." *Deming v. Nationwide Mut. Ins. Co.*, 279 Conn. 745, 761 (2006).

Second, there is no dispute that Entegee supplied adequate consideration, in the form of a promise of employment, when Korwek agreed to enter into the Employment Agreement.  *See Econ. Grocery Stores Corp. v. McMenamy*, 290 Mass. 549, 552, 195 N.E.2d 747, 748 (Mass. 1935); *Van Dyck Printing Co. v. DiNicola*, 43 Conn. Supp. 191, 195-96, 648 A.2d 898, 901 (Conn. Super. Ct. 1993).

Third, the restrictive covenants are reasonable in scope.  Beginning with the non-compete provision, Defendant Korwek is prohibited from working at a competitor of Entegee in a similar capacity to the one he performed at Entegee for a one year period.  *See* [Dkt. #12-2, Ex. B to Am. Compl. at ¶ 7 c)].  Both Connecticut and Massachusetts courts routinely uphold non-compete clauses of similar (and even greater) geographic scope and duration.  *See, e.g., Mancuso-Norwak Ins. Agency, Inc. v. Rogowski-Verrette Ins. Agency, LLC*, No. CV201201054C, 2012 WL 6629644, at *4 (Mass. Sup. Ct. Nov. 8, 2012) ("Three years is within the acceptable range in terms of duration of a covenant not to compete.") (citing *Alexander & Alexander, Inc. v. Danahy*, 21 Mass. App. Ct. 488, 498, 488 N.E.2d 22, 29 (Mass. App. Ct. 1986) (upholding five year restriction); *Blackwell v. E.M. Helides, Jr. Inc.*, 368 Mass. 225, 229, 331 N.E.2d 54, 56 (Mass. 1975) (three years)); *EMC Corp. v. Allen*, No. 975972B, 1997 WL 1366836, at *1 (Mass. Super. Ct. Dec. 15, 1997) (worldwide restriction reasonable where employee's responsibilities had been worldwide); *Scott v. General Iron & Welding Co., Inc.*, 171 Conn. 132, 140, 368 A.2d 111, 116 (Conn. 1976) (upholding five-year statewide non-compete agreement); *Tymetrix, Inc. v. Szymonik*, No. CV 064019412S, 2006 WL 3908558, at *5-6 (Conn. Super. Ct. Dec. 28, 2006) (upholding

**9**

two-year national and international noncompetition provision extending anywhere the employer had sold its product).  That the non-compete provision is not limited to competitors who work with a particular client, such as Sikorsky, does not render it overbroad.  [Dkt. #29 at 10].  At the time Korwek entered into his Employment Agreement, Entegee could not have known about which client(s) Korwek would subsequently pilfer confidential information.  Moreover, the record indicates that the confidential information taken concerned a number of Entegee clients, including Sikorsky.  Similarly, enforcement of the non-compete provision does not harm Defendant Butler's ability to compete in the market area, beyond preventing it from using confidential information Korwek obtained during his employment at Entegee.

The non-solicitation provisions are of the same geographic range and duration, and are thus reasonable.  *See* [Dkt. #12-2, Ex. B to Am. Compl. at ¶¶ 7 a)-b)].  Defendant Butler's assertion that the provisions are ambiguous is not well-founded.  *See* [Dkt. #29 at 8-9].  That Korwek may have difficulty identifying the clients Entegee served in the designated market area is both unlikely and insufficient to render the non-solicitation provisions ambiguous, or otherwise unenforceable.[4]  Similarly, the phrase "client(s) which were served by [Entegee] in the Market Area" is straightforward.  [Dkt. #12-2, Ex. B to Am. Compl. at ¶ 7 b)].  Butler's assertion that "[t]here is no reasonable basis for Entegee to restrict Mr. Korwek from soliciting companies" with whom "*he had no contact*" is also

---

[4] Indeed, Korwek's filings evince knowledge of Entegee's regional client base.  In his Affidavit, Korwek contends that "Butler does not service the same clients as Entegee[,]" and represents that "Entegee has only one or two clients in

flawed.  [Dkt. #29 at 11 (emphasis in original)].   Massachusetts and Connecticut

courts have granted preliminary injunctions enforcing non-solicitation provisions

extending to *all* of an employer's clients, particularly in the staffing context.  *See*

*Nat'l Eng'g Serv. Corp. v. Grogan*, No. 071583, 2008 WL 442349, at *5 (Mass.

Super. Ct. Jan. 29, 2008) (enforcing non-compete which prevented former

employee from "directly or indirectly . . . solicit[ing] . . . any 'customer, account,

business or good will' from [Employer] . . . or [] servic[ing] any customers

[Employer] has done business within the preceding 18 months"); *Zona Corp. v.*

*McKinnon*, No. CV 201100247, 2011 WL 1663094, at *2 (Mass. Super. Ct. Mar. 14,

2011) (finding non-solicitation restriction as to all of employer's clients

reasonable and granting preliminary injunction); *A.R.S. Servs., Inc. v. Morse*, No.

CV 201300910, at *12 (Mass. Super. Ct. Apr. 5, 2013) (finding employer established

likelihood of success with respect to enforcing a non-solicitation agreement

which prevented employee "from soliciting from or providing to [Employer's]

customers any products or services that [Employer] provide[d], and from causing

or soliciting any of [Employer's] clients or customers to end or limit their

business relationships with [Employer]"); *Webster Bank v. Ludwin*, No. CV

106006194, at *4 (Conn. Super. Ct. Jan. 7, 2011) (granting preliminary injunction

restraining defendant employee from "solicit[ing] any of the plaintiffs' customers,

including the customers that appear on the customer list that [defendant] took");

*Hoffnagle v. Henderson*, No. CV 020813972S, 2002 WL 652374, at *6 (Conn. Super.

Ct. Mar. 21, 2002) (preliminarily enjoining former employee from soliciting

---

Connecticut with which they place contractors."  [Dkt. #31-1, Korwek Aff. at ¶ 9].

business from clients of two entities for a five-year period).  While the Court recognizes the broad scope of the non-solicitation provision—which may not be warranted in every case—given the nature of Korwek's position, his previous lack of any experience in the staffing industry, and Plaintiff's demonstration that Korwek had access to and took documents and information generally applicable to Entegee's clients, including hundreds of resumes, pricing data, and client and employee contact information, the Court finds such a provision likely to be enforced.

The non-disclosure provision, which prevents Korwek from "directly or indirectly disclosing to any third party, or using for any purpose other than for the direct benefit of [Entegee]" confidential information, is also likely enforceable, given the restrictions Entegee places on accessing this information, including requiring employees to input usernames and passwords and preventing employees from remotely accessing such data.  [Dkt. #12-2, Ex. B to Am. Compl. at ¶ 5]; *see also Oxford Global Res., Inc. v. Consolo*, No. CA 024763BLS2, 2002 WL 32130445, at *5 (Mass. Super. Ct. May 6, 2002) (finding as likely enforceable confidentiality provision which protected "business plans, forecasts, pricing structure, budget information . . . and contract and client lists as well as related information such as resumes, special needs, employment requirements, preferences, contact information and contacts" where plaintiff showed "that it takes steps to protect the confidentiality of these types of information").  In addition, Plaintiff established that the confidential information that was taken, including client requisitions seeking candidates, and contractor names, contact

information, bill rates, and pay rates, falls within the scope of the non-disclosure provision and exceeds "general business information and routine data of a particular company." *Augat, Inc. v. Aegis, Inc.*, 409 Mass. 165, 169 (Mass. 1991).

Fourth, the public interest favors the enforcement of reasonably written restrictive covenants like the ones at issue here. *See New England Tree Expert Co. v. Russell*, 306 Mass. 504, 508-09, 28 N.E.2d 997, 999 (Mass. 1940); *Shipley v. Kozlowksi*, 926 F. Supp. 28, 30 (D. Mass. 1996) ("It is in society's best interest to recognize and enforce agreements which [are] voluntarily entered into and accepted."); *New Haven Tobacco Co. v. Perrelli*, 11 Conn. App. 636, 639, 528 A.2d 865, 867 (Conn. App. 1987) ("In evaluating the validity of . . . restrictive covenants . . . the determinant is not whether the public's freedom to trade has been restrict in *any* sense, but rather whether that freedom has been restricted unreasonably.") (emphasis in original). Thus, under either Massachusetts or Connecticut law, Plaintiff has demonstrated a high likelihood of success on the merits.[5]

Finally, the Plaintiff has put forth evidence demonstrating that "absent a preliminary injunction [it] will suffer an injury that is neither remote nor

---

[5] Defendant Korwek's claim that Entegee waived the non-compete agreement "by allowing Korwek and other recruiters to leave Entegee to work with competitors" does not alter the Court's conclusion.  [Dkt. #31 at 3].  Indeed, when Korwek left Entegee for a competitor, Entegee sent him a demand letter reminding him of his non-disclosure and non-compete obligations and requiring him to provide "written assurances as to [his] compliance with [his] obligations under the Agreement."  [Dkt. #38-4, Ex. C to Hatch Aff.].  Korwek returned to Entegee approximately a month later.  [Dkt. #38-1, Hatch Aff. at ¶ 13].  In addition, Korwek's bare assertion that, "[t]o my knowledge, Entegee has not sued [] other recruiters or tried to enforce their non-compete agreements" does not come close to establishing a waiver defense.  [Dkt. #31-1 at ¶ 11].

speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007).  As the record establishes, Defendant Korwek took from Entegee and removed from its computers documents and information regarding key clients, such as Sikorsky, employees, and requisitions. Given the detailed and sensitive nature of the information Korwek took with him, its use or dissemination to third parties cannot but erode goodwill Entegee has developed with these individuals and entities and result in the loss of client relationships.  *See Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999) (since it is difficult to calculate monetary damages in the event of loss of a client relationship "that would produce an indeterminate amount of business in years to come," the violation of an enforceable non-compete constitutes irreparable harm); *Veramark Techs., Inc. v. Bouk*, 10 F. Supp. 3d 395, 401 (W.D.N.Y. 2014) ("[A] threat to customer goodwill constitutes a threat of irreparable harm.").  In addition, where, as here, the Defendant (i) seeks to commence work with a direct competitor of Plaintiff, (ii) surreptitiously took reams of confidential documents and materials concerning the solicitation of clients, (iii) with the stated purpose of using these documents at his new work place in order to be successful there, and (iv) by an easily transferrable and reproducible means (*i.e.* a portable USB drive and via email), absent an injunction, Plaintiff is "*likely* to suffer irreparable harm if equitable relief is denied."  *Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc.*, 323

F. Supp. 2d 525, 531 (S.D.N.Y. 2004) (quoting *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990) (emphasis in original)).

Defendants respond by citing to *Bagley v. Yale Univ.*, No. 3:13-cv-1890 (CSH), 2014 WL 7370021 (D. Conn. Dec. 29, 2014), a case which bears no resemblance to the present matter.  In *Bagley*, the court found that the plaintiff, a professor, had failed to establish irreparable harm based on damage to her professional reputation because she did not show that post-trial remedies of "back pay, front pay, and a reinstatement" were insufficient to address such harm.  *Id.* at *5.  Here, Plaintiff establishes irreparable harm through the loss of goodwill and accompanying losses of client relationships, which are fundamentally different from the "damage to a[n individual] plaintiff's reputation in his or her chosen field"  and produce harm which is both imminent and non-quantifiable.  *Bagley*, 2014 WL 7370021, at *10; *see also Doherty*, 60 F.3d at 38 (holding that "a loss of prospective goodwill can constitute irreparable harm" where such harm "is both imminent and non-quantifiable").[6]

Finally, Defendant Korwek contends that Entegee does not have any goodwill with client Sikorsky, that it has not worked with Sikorsky in two years,

---

[6] Similarly unpersuasive is Defendant's reliance on Korwek's testimony on direct-examination that he presently has no Entegee documents in his possession, custody, or control and has no intention to use or disseminate any Entegee data.  [Dkt. #63 at ¶ 13].  Given the numerous inconsistencies throughout Korwek's testimony at the preliminary injunction hearing and the manner in which Korwek obtained the confidential information (surreptitiously sending and downloading it to his personal devices while deleting information from Entegee's computers) the Court does not find his testimony credible on this point.  *See Bel Canto Design, Ltd. v. MSS Hifi, Inc.*, 837 F. Supp. 2d 208, 222 (S.D.N.Y. 2011) (finding defendant's testimony that he did not physically alter serial numbers "not credible" in the face of "overwhelming[]" evidence to

since an incident between the two companies, and that Entegee has not placed a contractor with Sikorsky in Connecticut since this incident. *See* [Dkt. #31-1, Korwek Aff. at ¶¶ 15-17]. First, Korwek's bald assertions are belied by facts in the record. *See* [Dkt. #38, Hatch Aff. at ¶ 16 (stating that "[o]n June 3, 2015" an Entegee manager sent Korwek a text message informing him that "an important client of Entegee, Sikorsky Aircraft, had laid off a large number of employees" and instructing Korwek "to investigate any opportunity to assist those individuals in finding new job placements"); Dkt. #38-6, Ex. E to Hatch Aff. (same); Dkt. #46-2, Moreland Aff. at ¶ 6 ("At present, Entegee has an FFP placement at Sikorsky in Connecticut on a 2,600 hour contract.")]. Second, the voluminous records Korwek took from Entegee implicate clients and contractors in addition to Sikorsky.

Accordingly, Plaintiff is entitled to a preliminary injunction enjoining him from violating the non-compete, non-solicitation, and non-disclosure provisions of his Employment Agreement.

## B.   The Parties' Intent to Arbitrate Does Not Preclude This Court's Entry of a Preliminary Injunction

In addition to challenging Plaintiff's motion for a preliminary injunction on the merits, Defendant Korwek brings a separate motion to stay this proceeding prior to ruling upon Plaintiff's motion. *See* [Dkt. #63]. The motion advances two arguments in support of a stay. Invoking the arbitration provision in the Employment Agreement, Korwek first contends that the clause granting Entegee the right to seek preliminary relief from a court does not apply because this right

contrary and entering preliminary injunction).

attaches only where "the award to which that party may be entitled may be rendered ineffectual without such provisional relief."  [*Id.* at ¶ 2].  Korwek then asserts that because AAA Rule 32 provides "the equivalent remedy of provisional relief . . . the Court is bound to enforce [the arbitration provision] through a stay of action."  [*Id.* at ¶¶ 3-4].  Defendant Korwek is mistaken for two reasons.

First, as Korwek's counsel conceded at oral argument, an AAA arbitrator would not be able to impose and enforce preliminary injunctive relief in this case.  Second, the Second Circuit expressly rejected the essence of the argument Korwek presses here.  *See Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1054 (2d Cir. 1990) ("declin[ing] th[e] invitation" to adopt plaintiffs' proposed "rule of necessity" which would limit a "district court's power to issue injunctions pending arbitration" only to where "the movant has proved that the arbitrators are unable to provide the requested relief in a timely fashion" because such rule "is unnecessary" and "would place an unwarranted burden on the movant who would have to litigate the necessity issue based largely on speculation").

Korwek next contends that because issues relevant to the consideration of Plaintiff's motion are also issues which must be arbitrated, a stay should be entered to allow for the arbitral resolution of these issues.  *See* [Dkt. #63 at ¶¶ 17-19].  Such argument misapprehends the purpose of a motion for a preliminary injunction.  When faced with such a motion, courts must assess the plaintiff's likelihood of success on the merits.  As a matter of logic, therefore, the Court must conduct some assessment of issues that will be the subject of the

17

underlying litigation.  The purpose of this assessment is not to resolve such issues, but to determine whether preliminary relief is necessary so that once the proper body has resolved them, the victorious party is able to be made whole.[7]

Defendant Butler raises several additional arguments in favor of an immediate stay.  None of these are successful.  Butler first contends that the Court lacks jurisdiction over the issue of whether "preliminary injunctive relief is excepted from the arbitration clause."  [Dkt. #56 at 2].  However, as Plaintiff Entegee points out, the parties' agreement expressly provides for judicial consideration of such relief, such clause is not ambiguous, and must therefore be enforced.  *See Lexington Ins. Co. v. All Regions Chem Labs, Inc.*, 419 Mass. 712, 713, 647 N.E.2d 399, 400 (Mass. 1994).  Moreover, as Butler concedes, "[o]rdinarily, the issue of whether an issue is arbitrable is for the court" and this presumption applies unless "there is clear and unmistakable evidence" the parties intended for the matter to be decided by the arbitrator.  [Dkt. #56 at 5].  Here, the agreement between the parties unambiguously establishes the parties' intent that "preliminary injunctive relief" is an issue for "a court of competent jurisdiction."  [Dkt. #12-2, Ex. B to Am. Compl. at ¶ 14].  In addition, the arbitration clause states that "any and all legally cognizable disputes, claims or controversies . . . *shall be resolved* by binding arbitration."  [*Id.* at ¶ 12 (emphasis added)].  The clause does not reference *relief* (preliminary or otherwise) and the granting of preliminary relief does not resolve any of the "disputes, claims or

---

[7] The remainder of Korwek's motion simply challenges the sufficiency of Plaintiff Entegee's showing in support of its motion for preliminary relief and Entegee's motive in bringing this action.  *See* [Dkt. #63 at ¶¶ 5-16, 20-26].

controversies" between the parties.  [*Id.*].  There is thus nothing "ambiguous" about the arbitration provision, nor is there any conflict between it and the subsequent provision providing for courts to administer preliminary injunctive relief.  [Dkt. #56 at 8].

Accordingly, the Court denies Defendant's motion for a stay without prejudice to renewing once the parties are prepared to arbitrate this matter.

IV.    Conclusion

For the foregoing reasons, the Court DENIES Defendant Korwek's Motion to Stay [Dkt. #30] without prejudice to renewing at a later date, GRANTS Plaintiff's Motion for Preliminary Injunction [Dkt. #2], and hereby orders the following injunctive relief:

(1) Defendant Kyle Korwek is preliminarily enjoined from entering into, engaging in, being employed by, consulting or rendering services, in a capacity performing functions similar to those performed or managed by Korwek while employed at Entegee Inc., for any business which competes with, or is similar to, Entegee, Inc.'s business (including Butler America LLC) within the Market Area of a 50-mile radius of Shelton, Connecticut, the Entegee office to which Mr. Korwek was assigned during his last twelve months of employment at Entegee (the "Market Area"), for a period of twelve (12) months from the date of the termination of his employment with Entegee on June 4, 2015.

(2) Defendant Kyle Korwek is preliminarily enjoined from soliciting, hiring, recruiting, or attempting to recruit any person employed by or contracted with Entegee, Inc., who either worked within the Market Area, or with whom Korwek

19

had personal contact through his employment with Entegee, Inc., at any time during the twelve (12) months immediately prior to Korwek's resignation of employment with Entegee, Inc.

(3) Defendant Kyle Korwek is preliminarily enjoined from soliciting, hiring, recruiting, or attempting to recruit any established or prospective Entegee Client he served or solicited while employed by Entegee, Inc., or any Entegee Client(s) which were served by Entegee, Inc. in the Market Area at any time within the last twelve months of his employment immediately prior to Korwek's resignation of employment with Entegee, Inc.

(4) Defendant Kyle Korwek is preliminarily enjoined from using or disclosing any of Entegee's Confidential Information as that term is defined in Section 4 of Korwek's Entegee, Inc. d/b/a Engineering Resources Colleague Agreement (Employment Agreement).

      SO ORDERED this 4th day of September, 2015 at Hartford, Connecticut.

                                       /s/
                               Vanessa L. Bryant
                               United States District Judge